LAURIE JEAN YOKOSH,

            Plaintiff,

v.                                                     Case No. 22-cv-0949-bhl

MARTIN J. O'MALLEY,[1]
Commissioner for Social Security,

            Defendant.

## DECISION AND ORDER

      Plaintiff Laurie Yokosh seeks review of the final decision of the Commissioner of the Social Security Administration denying her claim for Disability Insurance Benefits (DIB) under the Social Security Act, 42 U.S.C. § 405(g). For the reasons set forth below, the Acting Commissioner's decision will be affirmed.

## PROCEDURAL BACKGROUND

      Yokosh applied for DIB on September 4, 2015, alleging a disability onset date of August 14, 2015. (ECF No. 11-6 at 2.) After her claims were denied initially and on reconsideration, she requested a hearing before an administrative law judge (ALJ). (ECF No. 11-5 at 2–14.) The ALJ held a hearing and denied Yokosh's disability claim in a February 28, 2018 decision. (ECF No. 11-3 at 14–22.) The Appeals Council later denied Yokosh's request for review of that decision. (*Id.* at 2–4.)

      Yokosh filed a complaint in this Court on November 7, 2018, seeking judicial review of the agency's decision. (ECF No. 11-10 at 2–3.) The government agreed to a remand and, on June 3, 2019, the Court ordered the case remanded for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g). (*Id.* at 55–60.) The Appeals Council then vacated the ALJ's February 2018 decision and remanded the case to a different ALJ. (*Id.* at 63–65.) The second ALJ

---

[1] On December 20, 2023, while this matter was pending, Martin J. O'Malley was sworn in as Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, O'Malley is substituted as the defendant in this case and no further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act. *See* 42 U.S.C. § 405(g).

held a new hearing on November 24, 2019, and, in an April 8, 2020 decision, found Yokosh became disabled on November 26, 2017 and continued to be disabled. (*Id.* at 99–114.) The ALJ also determined, however, that Yokosh was not disabled prior to that date. (*Id.* at 114.)

On May 5, 2021, the Appeals Council granted Yokosh's request for review and remanded the case back to the ALJ for a new (third) hearing and decision. (*Id.* at 124–30.) In doing so, the Appeals Council affirmed the favorable finding that Yokosh was disabled as of November 26, 2017, but noted that the period prior to November 26, 2017, required further adjudication. (*Id.* at 128.) The Appeals Council ordered the ALJ to obtain medical expert evidence, further evaluate Yokosh's alleged symptoms, the medical opinions, and her residual functional capacity (RFC), and obtain supplemental evidence from a vocational expert if warranted. (*Id.* at 127–128.) On March 29, 2022, the ALJ held a third hearing, where two medical experts (an orthopedic surgeon and a psychologist) and a vocational expert testified. (ECF No. 11-9 at 41–104.) On May 24, 2022, the ALJ issued a decision finding Yokosh disabled as of September 1, 2017, but not disabled prior to that date. (*Id.* at 7–28.) Yokosh did not file exceptions with the Appeals Council, so the ALJ's May 2022 decision became the agency's final decision. *See* 20 C.F.R. § 404.984(d). Yokosh now seeks judicial review in this Court pursuant to 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

Yokosh was born on November 27, 1962, and obtained a GED in 1980. (ECF No. 11-7 at 2, 7.) She was employed as a bookkeeper at her brother's engineering company from 2008 until August 14, 2015, her alleged disability onset date. (ECF No. 11-8 at 41.) On that date, Yokosh was 52-years old. Prior to her employment as a bookkeeper, Yokosh worked as a customer service representative and a receptionist. (ECF No. 11-7 at 7.) Yokosh reports experiencing lumbar and cervical pain and explained that when she missed work due to pain, her brother would accommodate her absences. (ECF No. 11-8 at 41, 43.)

Yokosh premised her claim for disability on osteoarthritis and bone spurs in her back, scoliosis, bipolar disease, and inflammation of the cartilage "around the heart." (ECF No. 11-7 at 6.) On November 11, 2015, Roland Manos, Ph.D. evaluated Yokosh for a mental status evaluation with reference to bipolar disorder. (ECF No. 11-8 at 40.) Yokosh complained of chronic spondylosis with a 2009 pain onset date and reported that she was diagnosed with depression in 1999 and, in 2001, the diagnosis was changed to bipolar. (*Id.* at 41.) Yokosh experienced a gradual

increase in the severity of her pain and an orthopedic surgeon recommended surgery when injections were no longer an option. (*Id.* at 40.)

In assessing Yokosh's claim, the ALJ followed the five-step sequential evaluation of disability set out in 20 C.F.R. § 404.1520(a). The ALJ found that since the alleged onset date, Yokosh had several severe impairments: degenerative disc disease of the lumbar and cervical spine, osteoarthritis of the left hip, and small fiber neuropathy. (ECF No. 11-9 at 11.) The ALJ also determined that the record did not support finding several other impairments severe, including Yokosh's Fuchs' dystrophy, left arm paresthesia to the ulnar nerve distribution, medial epicondylitis, depression, or anxiety. (*Id.*) At the hearing, the ALJ heard testimony from Darius Ghazi, M.D., board certified in orthopedic surgery, who testified that Yokosh equaled List 1.17 for joint disease of the hip. (*Id.* at 24, 71.) The ALJ credited Dr. Ghazi's testimony and found Yokosh disabled as of September 1, 2017. (*Id.* at 28.) Prior to the established onset date, the ALJ found that Yokosh did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id.* at 17.)

The ALJ also determined that prior to September 1, 2017, Yokosh had the RFC to perform light level exertional work except if the work involves standing and sitting, she must have two to three minutes to adjust posture or reposition herself, approximately every 15 minutes. (*Id* at 18.) The ALJ also limited Yokosh to occasional bending, stooping, balancing, kneeling, crouching, and crawling; occasional lifting from the floor; occasional climbing of ramps, stairs, ladders, ropes, and scaffolds; and occasional overhead reaching. (*Id.*) The ALJ found that prior to September 1, 2017, Yokosh was capable of performing her past relevant work as a bookkeeper. (*Id.* at 26.) The ALJ therefore determined that Yokosh was not disabled prior to September 1, 2017. (*Id*. at 28.) The parties agree that the only question for this appeal is whether Yokosh proved that her disability began before September 2017. (ECF No. 18 at 30; ECF No. 29 at 1.)

## LEGAL STANDARD

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)). In reviewing the record, the Court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is deferential and is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)).

## ANALYSIS

Yokosh challenges two aspects of the ALJ's decision. She first claims that the ALJ failed to provide good reasons for rejecting Yokosh's treating psychologist's opinion that she would have marked difficulties engaging in complex work tasks. (ECF No. 18 at 18–26.) Second, Yokosh contends that the ALJ's determination that her eye impairment was non-severe prior to September 1, 2017 was not supported by substantial evidence. (*Id.* at 26–29.) Neither complaint establishes a basis for remand, and the Commissioner's decision will, therefore, be affirmed.

**I.  The ALJ Reasonably Relied on Four Psychologists' Opinions in Concluding that Yokosh's Mental Impairments Were Not Severe and Adequately Articulated His Reasons for Discounting Her Treating Psychologist's Opinion.**

The ALJ's findings with respect to Yokosh's mental health were based on multiple medical opinions. In concluding that Yokosh's mental impairments were not severe, the ALJ relied on opinions from: (1) Roland W. Manos, Ph.D., a consulting psychologist; (2) Roger Rattan, Ph.D., a state agency psychologist; (3) JoAnn Coyle, Ph.D., a state agency psychologist; and (4) Michael Rabin, Ph.D., the testifying expert. (ECF No. 11-9 at 13–17.) Dr. Manos conducted a mental status evaluation of Yokosh on November 1, 2015, and found Yokosh capable of understanding and remembering simple directions (dependent on the physical exertion required), maintaining concentration, coping with routine work stress, and adapting to changes in the work environment. (ECF No. 11-8 at 43–44.) He also found that Yokosh had no difficulty interacting appropriately with supervisors, co-workers and the public. (*Id.* at 43.) On November 30, 2015, Dr. Rattan, a state agency psychologist, reviewed Yokosh's allegations and Dr. Manos's evaluation and found

that Yokosh had mild limitation in social functioning and maintaining concentration, persistence, or pace and was capable of performing unskilled work. (ECF No. 11-4 at 8–9.) At the reconsideration level, Dr. Coyle found that the evidence supported the initial determination that Yokosh's mental impairments were not severe and "[t]here are no significant psych related functional limitations." (ECF No. 11-4 at 23.) Dr. Rabin testified at the March 2022 hearing and did not endorse any mental work restrictions. He opined that Yokosh had a depressive and adjustment disorder with mixed anxiety that cause mild impairment in the agency's "paragraph B" functional domains. (ECF No. 11-9 at 81–83.) He also confirmed that he did not "consider those mental health impairments to be severe as that's defined in the regulations." (*Id.* at 83.) During cross-examination, Dr. Rabin declined to limited Yokosh to only simple work because she "did not show any cognitive problems" and it was unclear "to what degree her physical symptoms interfere with her higher level concentration or higher level tasks." (*Id.* at 89.)

The ALJ gave great weight to the opinions of Drs. Rattan, Coyle and Rabin and some weight to the opinion of Dr. Manos, which demonstrated that Yokosh had mild limitation in understanding, remembering, or applying information; mild limitation in interacting with others; mild limitation in concentration, persistence, or maintaining pace; and mild limitation in adapting or managing herself. (ECF No. 11-9 at 15.) The ALJ also gave great weight to Dr. Rabin's opinion that Yokosh had no more than mild limitations in the "B criteria" and found this opinion was consistent with the claimant's "generally normal memory, cognition, attention, behavior, interaction, mood, judgment and grooming." (*Id.* at 17.) Dr. Rabin's opinion was also consistent with Dr. Manos's testing results, which showed little limitation in her abilities. (*Id.*)

The ALJ also evaluated the opinion of Yokosh's treating psychologist, Itzhak Matusiak, Ph.D., but found it inconsistent with the record, and, therefore, gave it little weight. (*Id.* at 16.) The ALJ noted that Dr. Matusiak began seeing Yokosh in June 2016, continuing approximately twice a month for a year. (*Id.* at 15 (citing ECF No. 11-8 at 255–72).) Dr. Matusiak opined that Yokosh had mild limitations in understanding, remembering, or carrying out simple instructions, but would have marked limitations with complex instructions. (ECF No. 11-8 at 133.) He further indicated that Yokosh had moderate limitations in her ability to make judgments on simple work-related decisions, but that she would have extreme limitations in her ability to make judgments on complex work-related decisions. (*Id.*) Dr. Matusiak also concluded that Yokosh would have marked limitations in interacting with the public, supervisors, and co-workers and in responding

appropriately to usual work situations and changes in routine work setting. (*Id.* at 134.) Dr. Matusiak cited to formal psychological test results and stated that Yokosh exhibited significant problems with short-term memory, attention, and concentration as well as depression and anxiety. (*Id.* at 133–34.)

Yokosh argues that the ALJ incorrectly rejected Dr. Matusiak's opinion that she was markedly limited in understanding, remembering, and carrying out complex instructions and extremely limited in judging complex work decisions. (ECF No. 18 at 18–26.) But the record confirms the ALJ committed no reversible error. The ALJ considered Dr. Matusiak's opinion and explained he was giving it little weight for a number of specific reasons. The ALJ noted that a review of Dr. Matusiak's treatment notes did not demonstrate that Yokosh was significantly limited in her memory, attention, concentration, ability to interact, or her mood and, therefore, did not support his opinion of Yokosh's marked limitations. (ECF No. 11-9 at 16–17.) The ALJ also found that Dr. Matusiak's notes did not support his opinion that negative consequences could result in Yokosh could losing control. (*Id.* at 15.) Contrary to Yokosh's contention that the ALJ "ignored an entire line of evidence supporting Dr. Matusiak's opinion," (ECF No. 18 at 22), the ALJ acknowledged Yokosh's reports of pain and her frustration with that pain to Dr. Matusiak but considered the medical evidence and found that the "evidence does not suggest greater than mild limitations in her ability to perform work related activities." (ECF No. 11-9 at 15.) "An ALJ may discount even a treating physician's opinion if it is inconsistent with the medical record." *Givens v. Colvin*, 551 F. App'x 855, 861 (7th Cir. 2013). And courts uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment." *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010). Of note, Yokosh does not argue that the ALJ should have also credited Dr. Matusiak's opinions on marked limitations on social interactions and workplace changes. This is understandable as Dr. Matusiak's opinion on social interactions had no support in the record and was flatly contradicted by Yokosh's own social history that she had a boyfriend, four close friends, kept in contact with her sons, attended family gatherings during the holidays, liked to play cards and shop, and (when she was working) got along well with her co-workers. (*See* ECF No. 11-8 at 43.)

While the ALJ noted that Yokosh complained of pain and noted when her pain increased due to physical activity such as shoveling or holiday baking, he also noted that Yokosh also discussed her frustration with her significant other, family relationships, and finances which

contributed to her stress level and anxiety. (ECF No. 11-9 at 15 citing ECF No. 11-8 at 259-60, 269-70.) The record also reflected that Yokosh engaged in a variety of activities including cooking, gardening, "a lot of baking for the holidays," rolling hundreds of cigarettes weekly, and traveling to the Wisconsin Dells to observe ice castles and carvings. (ECF No. 11-8 at 259–60, 269–70.) The ALJ also noted that Yokosh's continuation with therapy as treatment was a conservative approach inconsistent with Dr. Matusiak's assessed limitations. (ECF No. 11-9 at 15.) At the last documented session on July 29, 2017, with Dr. Matusiak, Yokosh reported decreased pain from the most recent radiofrequency ablation (RFA) procedure on her neck. (ECF No. 11-8 at 266.) Contrary to Dr. Matusiak's assessment of extreme limitations, Yokosh "presented with generally normal psychiatric symptoms" and her reported daily activities such as "caring for the house herself, travelling, rolling cigarettes, getting together with others, and baking" suggested she could complete tasks and maintain appropriate interactions. (ECF No. 11-9 at 17.) An ALJ may discount opinions that are unsupported and inconsistent with other evidence. *See* 20 C.F.R. § 404.1527(c).

Yokosh also argues that the ALJ should be reversed because he failed to discuss Dr. Matusiak's status as a licensed psychologist who specializes in pain-related mental health disorders, citing *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018). (ECF No. 18 at 21–22.) The agency's regulations require an ALJ to consider the regulatory factors listed in 20 C.F.R. § 404.1527(c). These factors include frequency of examination; "the treatment relationship's length, nature, and extent; the opinion's consistency with other evidence; the explanatory support for the opinion; and any specialty of the treating physician." *Gerstner*, 879 F.3d at 263 (citing § 404.1527(c)). In *Gerstner*, the Seventh Circuit remanded, in part, because the ALJ failed to consider the requisite regulatory factors and held that the ALJ overlooked the extent to which the treating source's opinions were consistent with other medical sources. *Id.* at 262–63. The Court of Appeals also criticized the ALJ for failing to adequately analyze the source's treatment notes and failing to mention that the treating source was a psychiatrist who regularly treated the claimant for over six years. *Id.* at 261–63. Contrary to Yokosh's suggestion, the concerns discussed in *Gerstner* are not present in this case. Here, the ALJ noted that Dr. Matusiak was a Ph.D., that Yokosh saw him for counseling twice a month beginning in June 2016 and continuing for one year and referred to Dr. Matusiak as a Doctor throughout the opinion. (ECF No. 11-9 at 15–16.) And, as previously noted, the ALJ explained the inconsistencies between Dr. Matusiak's opinion and

evidence in the record, as well as his own treatment notes. The Court will not remand the case back for the ALJ to document that Dr. Matusiak's specialty is in pain-related mental health disorders.

In sum, the ALJ satisfactorily explained why he did not credit Dr. Matusiak's opinion. That is more than enough to satisfy the lenient "substantial evidence" standard. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). And once that threshold is crossed, this Court may not "reweigh the evidence or substitute [its] judgment for that of the ALJ's." *Pepper*, 712 F.3d at 362. Seventh Circuit precedent is clear: "An ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician, or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability." *Skarbeck v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (internal quotations and citations omitted); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) ("If the ALJ discounts the physician's opinion after considering [the regulatory] factors, we must allow that decision to stand so long as the ALJ 'minimally articulated' his reasons—a very deferential standard that we have, in fact, deemed 'lax.'") (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)).

Yokosh's argument that no psychologist contradicted Dr. Matusiak's rating of marked limitations on complex instructions and decision misunderstands agency policy, as contended by the Commissioner. (ECF No. 29 at 10.) The mental listings explain that "the greatest degree of limitation of any part of the area of mental functioning directs the rating of limitation of that whole area of mental functioning." 20 C.F.R. pt.404, subpt. P, app. 1, § 12.00(F)(3)(e). If a claimant has a "marked" limitation in any part of a "paragraph B" domain of mental functioning, then a "marked" limitation will be rated for that entire domain. *Id.* § 12.00(F)(3)(e)(ii). Drs. Rattan, Coyle, and Rabin all concluded that Yokosh had no more than mild limitation in any functional domain. If any one of these psychologists had determined that Yokosh had a marked limitation in complex tasks or decisions, he or she would have rated a marked limitation in at least one paragraph B domain. And, although an ALJ is required to "consider" all impairments, including ones that are not "severe" when assessing a claimant's RFC, 20 C.F.R. § 404.1545(a)(2), the agency's regulations do not suggest that non-severe impairments must always result in corresponding RFC limitations. Instead, the ALJ must account for functional limitations caused

by non-severe impairments in formulating the RFC assessment when those impairments affect the claimant's work functionality. Accordingly, an RFC finding need not account for a non-severe impairment that does not affect a claimant's ability to function at a job.

In *Felts v. Saul*, 797 F. App'x 266 (7th Cir. 2019), the ALJ found a number of severe physical impairments but found that the claimant's mental impairments from depression were "not severe." *Id.* at 268. When the ALJ evaluated the paragraph B criteria, the ALJ found "only mild limitations." *Id.* Similar to this case, the ALJ in *Felts* included physical restrictions in the RFC but declined to include mental restrictions because he found they were inconsistent with the record evidence. *Id.* ("[T]he ALJ determined that Felts's complaints of concentration difficulties were inconsistent with prior examinations at which he was alert and responded appropriately, his preaching at church, and his later computer work.").

The Commissioner also contends that even if the ALJ had included a restriction that precluded complex tasks the outcome would remain the same and therefore any error would be harmless. (ECF No. 29 at 11.) The Commissioner's argument relies on the testimony of the vocational expert from the November 2019 hearing. (*Id.* at 12.) At that hearing, the vocational expert testified that a hypothetical individual limited to light exertional work, occasional postural activities, and overhead reaching (Yokosh's RFC) and no work involving the use of fine visual acuity would remain able to perform over 2,000,000 representative jobs in the national economy such as mail clerk (DOT 209.687-026), office assistant (DOT 239.567-010), or light-duty cleaner (DOT 323.687-014.) (ECF No. 11-9 at 136.) If that same hypothetical individual were further limited to only simple, routine, repetitive tasks and only simple work-related decisions, those three jobs would remain available. (*Id.* at 136–37.) And, if that same hypothetical individual would need the option to change positions between sitting and standing at their discretion (a more restrictive limitation than the RFC, which limits Yokosh to changing positions only every fifteen minutes), those three jobs would remain available "as long as there was no significant disruption of task." (*Id.* at 137.) The Court notes that there is no evidence that Yokosh would need to be off task during the times she repositioned herself.

Yokosh argues that it would be improper for this Court to credit the vocational expert testimony from the November 2019 hearing where the resulting decision was vacated. (ECF No. 36 at 1–2, 15.) Citing *Jones v. Saul*, 823 F. App'x 434 (7th Cir. 2020), Yokosh further argues that the Court should be unwilling to insert a Step Five finding into a disability decision that lacks one.

(*Id.* at 14–15.) In *Jones*, the court noted that for any error to be harmless, the evidence must "conclusively" establish a material fact in a case (there, the availability of work for Jones). *Jones*, 823 F. App'x at 440. The court went on to state that the *Jones* ALJ did not make a finding on the vocational expert's contested testimony and, therefore, whether other work would be available to a person facing more restrictive limitations remained unresolved. *Id.* The court remanded the case for further proceedings. *Id.*

To support a finding that an individual is not disabled at step five, the Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do given the residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1512(b)(3), 404.1560(c). In this case, the vocational expert's testimony that a claimant with Yokosh's RFC, further limited to simple, routine, and repetitive tasks and simple work-related decisions could perform over 2,000,000 jobs in the national economy remains uncontested. Even if the ALJ had adopted more restrictive limitations, such as complex tasks, Yokosh would still have been found "not disabled" under the Social Security Act. Yokosh makes no argument that the vocational expert's evidence, including the types of positions or numbers of jobs, was flawed in any way. Simply put, even if the ALJ had adopted more restrictive limitations, such as complex tasks, the evidence would still result in Yokosh being found not disabled at step five. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013) ("[W]e will not remand a case to the ALJ for further explanation if we can predict with great confidence that the result on remand would be the same.").

**II.    Substantial Evidence Supports the ALJ's Determination that Yokosh's Eye Impairment Was Non-Severe Prior to September 2017.**

In the vacated April 2020 decision, the ALJ found Yokosh's Fuchs' dystrophy[2] to be a severe impairment. (ECF No. 11-10 at 102.) The resulting RFC included a restriction limiting her to work that did not require the use of "fine acuity" vision, (*id.* at 106), and the vocational expert noted that this precluded Yokosh's former employment which required computer work. (ECF No. 11-9 at 135–36.) The vocational expert, however, testified that such an individual could perform

---

[2] Fuchs' dystrophy is an eye disease where fluid builds up in the cornea causing the cornea to swell and thicken, leading to glare, blurred or cloudy vision, and eye discomfort. *See Fuchs' Dystrophy*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/fuchs-dystrophy/symptoms-causes/syc-20352727 (last visited Feb. 15, 2024).

other work that exists in the national economy, such as mail clerk, office assistance, and light duty cleaner, and therefore, Yokosh was not disabled. (*Id.* at 136.)

In his RFC analysis, the ALJ did not include a limitation restricting fine acuity vision. Yokosh argues that the ALJ's "unexplained abandonment" of his prior finding regarding fine visual acuity was not supported by substantial evidence. (ECF No. 18 at 26–29.) The Court disagrees. As persuasively noted by the Commissioner, the reason for the change is clear: the April 2020 decision covered the period of time from August 14, 2015, the alleged onset date, through April 2020, whereas this decision "adjudicated only the discrete period from August 14, 2015, until November 26, 2017." (ECF No. 29 at 13.) At the March 29, 2022 hearing, the ALJ noted that the prior decision included a diagnosis of Fuchs' dystrophy which was "not necessarily a severe impairment before the claimant's [55th] birthday [November 26, 2017]." (ECF No. 11-9 at 92.)

In the decision, the ALJ then explained why he found Yokosh's Fuchs' dystrophy was non-severe prior to September 2017. (*Id.* at 12.) The ALJ noted that in September 2015, Yokosh's vision was intact. (*Id.*) During a November 2015 consultative examination, Yokosh's uncorrected vision was 20/40 for her right eye and 20/70 for her left eye. (*Id.*) In February of 2016, Yokosh denied blurring vision or diplopia. (*Id.*) In July 2016, Yokosh denied visual symptoms. (*Id.*) In May 2017, Yokosh had an ophthalmological examination due to cloudy vision and rainbows around light, however, her corrected visual acuity was 20/25 in both eyes. (*Id.*) Although the diagnosis was Fuchs' dystrophy, the recommended treatment was an annual follow-up visit with no recommendations for surgery, laser treatment, retinal specialist, or glaucoma testing. (*Id.*) In December 2018, Yokosh reported eye pain, feeling like her eyes were swelling, and that she was photophobic, but this was after September 1, 2017, the relevant period when Yokosh was determined to be disabled. (*See id.*) Surgery was not recommended until July 2019. (*Id.*) The ALJ reasonably found that Yokosh's Fuchs' dystrophy worsened after September 1, 2017 and was not a severe impairment prior to that date. (*Id.*) Consequently, this change reopened the possibility of Yokosh performing her prior work. The ALJ found that prior to September 1, 2017, Yokosh was capable of performing her past relevant work as a bookkeeper. (*Id.* at 26–27.)

The ALJ's conclusion that Yokosh's eye impairment did not cause limitations prior to September 2017 is consistent with the opinions of the medical expert and the reviewing and examining medical consultants. (*See* ECF No. 29 at 14–15.) In November 2015, Dr. Glass, who

examined Yokosh, did not endorse any vision restrictions. (ECF No. 11-8 at 36). On November 19, 2015, Dr. Pat Chan, M.D. opined that Yokosh did not have any visual limitations. (ECF No. 11-4 at 11.) And on July 20, 2016, George Walcott, M.D. similarly opined that Yokosh did not have any visual limitations. (*Id.* at 26.) At the hearing, Dr. Ghazi adopted the same functional limitations as Dr. Glass. (ECF No. 11-9 at 74–75.) Yokosh complains that the ALJ failed to ask Dr. Ghazi any questions about vision, (ECF No. 18 at 27), but the ALJ did ask Dr. Ghazi whether there were any other work-related limitations, other than the limitations that he had already testified to, and he answered, "I don't think so." (ECF No. 11-9 at 76.) As noted by the Commissioner, Yokosh does not identify any line of evidence that the ALJ failed to consider. (ECF No. 29 at 15.) The ALJ's May 2022 decision addressed a different time than the April 2020 decision and the ALJ satisfactorily explained why the evidence did not support finding Yokosh's eye impairment severe during the earlier time frame. Thus the Court finds that the ALJ's decision to not include a fine acuity limitation was supported by substantial evidence and will not be disturbed by the Court.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that pursuant to sentence four of 42 U.S.C. §405(g), the decision of the Acting Commissioner of the Social Security Administration is **AFFIRMED**, and the case is **dismissed**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on February 20, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge